## DIXON–WOODS CO. *v.* PFEIFER.

*(Circuit Court, N. D. New York.  June 29, 1892.)*

1. PATENTS FOR INVENTIONS—EXTENT OF CLAIM—GLASS-ANNEALING FURNACES.

Claim 1 of letters patent No. 258,156, issued May 16, 1882, to Cleon Tondeur for an improvement in glass-annealing furnaces, covers: "The combination of the bars, $d$, $d'$, arranged side by side, and alternately between each other, the set, $d$, supporting the sheets of glass, while the bars, $d'$, are pushed towards the leer or flattening wheel, $a$, and the set, $d$, supporting the sheets of glass, and moving them onward and through the tunnel, substantially as set forth." The drawings show the bars raised some distance from the floor, and the specifications state that a space of about one foot is desirable beneath the bars; also that in transferring the glass one set of bars is raised, and the other lowered, about one inch. The evidence showed that there were great advantages in holding the glass some distance above the floor and carrying it in a horizontal plane. *Held* that, in view of the prior patents to Bievez, Bouvy, and others, the patent could only be sustained as describing mechanism for carrying the plate in a practically horizontal plane, above the floor, and that the statements in the specifications were sufficiently definite to be read into the claim, so as to give it this construction. *Tondeur* v. *Stewart*, 28 Fed. Rep. 561, and *Same* v. *Chambers*, 37 Fed. Rep. 333, followed.

SAME—SPECIFICATIONS.

As the specifications point out that the bars are to be located at some distance above the floor, and so arranged as to carry the glass on practically the same horizontal plane while advancing it through the leer, it is immaterial that the inventor did not more precisely point out the advantages which would inure from this arrangement, or that he himself was not aware thereof when obtaining the patent.

In Equity.  Bill by the Dixon–Woods Company against Pfeifer for infringement of letters patent No. 258,156, issued May 16, 1882, to Cleon Tondeur, for an improvement in glass-annealing furnaces.  Decree for complainant.

*W. Bakewell & Sons*, for plaintiff.
*Hey & Wilkinson*, for defendant.

WALLACE, Circuit Judge.  The patent in suit (granted May 16, 1882, to Cleon Tondeur, for glass-annealing furnace) has been twice adjudicated by Judge ACHESON at final hearing in fully contested cases in the circuit court for the western district of Pennsylvania, and sustained as to all the claims of which infringement was alleged.  The combinations which are the subjects of the several claims are each employed in the furnaces or leers of the defendant, who is a contractor and builder of leers.  Evidence has been introduced for the defendant in the present case respecting the prior state of the art, and the utility of the patented invention, which was not introduced in the former cases.  Unless, in view of this new evidence, there should seem to be reason for disagreeing with the conclusions reached by Judge ACHESON, the rule of comity

should prevail, and his conclusions should not be disturbed on any questions concerning which there is fair room for a difference of opinion.

The principal contest is upon the first claim, and it is not contended for the defendant that he can succeed unless the validity of this claim is successfully impeached. The invention set forth in the patent is defined by Judge Acheson in *Tonduer* v. *Chambers*, 37 Fed. Rep. 333, as follows:

"The patent discloses a device for transporting the sheets of glass from the flattening wheel to the discharge end of the annealing chamber, tunnel, or leer, consisting of two sets of parallel bars (designated *d* and *d'*) extending lengthwise through the leer, and elevated above the bottom thereof, the bars of the respective sets being arranged side by side, and alternately between each other, one set reciprocating longitudinally and conveying the glass, and the other set supporting the glass at certain times, whereby the sheets of glass are supported in and carried through the leer in substantially the same horizontal plane."

The claim reads as follows:

"(1) The combination of the bars, *d*, *d'*, arranged side by side, and alternately between each other, the set, *d*, supporting the sheets of glass, while the bars, *d'*, are pushed towards the leer or flattening wheel, *a*, and the set, *d'*, supporting the sheets of glass, and moving them onward and through the tunnel, substantially as set forth."

According to the views of Judge Acheson, as expressed in the case referred to, and in the earlier case of *Tondeur* v. *Stewart*, 28 Fed. Rep. 561, the first claim of the patent is to be read broadly for two sets of bars arranged alternately side by side some distance above the floor of the leer, so that the sheets of glass are supported by one set and moved onward by the other through the tunnel in practically the same horizontal plane when coacting mechanism is applied. According to the complainant's expert, the claim is infringed by any leer which employs two sets of bars arranged alternately side by side some distance above the floor of the leer and any mechanism coacting with said bars whereby they will perform the assigned function of supporting the sheets of glass and moving them onward through the leer in practically the same horizontal plane. A brief description of two types of leers will suffice to exhibit the prior state of the art. These are shown in the patents to Bievez and to Bouvy. The Bievez leer is of the usual, rectangular form, with the usual tile or stone floor. The floor is divided longitudinally by a series of channels. Located in these channels, and connected together so as collectively to form a frame, are a series of iron bars, resting on a series of grooved wheels. The wheels are supported by axles located in transverse channels beneath the floor. Coacting mechanism is employed for actuating the frame whereby the series of iron bars are raised, advanced, lowered, and pushed backward. In operation, a plate of glass from the flattening oven is placed upon the floor of the leer, and the mechanism is actuated to elevate the frame and lift the glass from the floor, carry the glass forward, and deposit it upon the floor. The frame is then lowered, pushed back to its original position,

and the operation repeated, until the glass is transported through the leer. The Bouvy leer, in general construction, resembles that of Bievez, but differs in the devices for transporting the glass through it. The frame which is supported in the longitudinal channels consists of two series of iron shelves, which reciprocate each between the other, each having a vertical and longitudinal motion, which is coincident and equal, and also continuous. Mechanism is employed which actuates one series of the shelves downward and forward, and the other at the same time upward and backward. In operation, the glass is placed upon one of the series of shelves, the mechanism is actuated, and, as the two series pass each other, the ascending series removes the glass from the descending series, and carries it forward until it is in like manner removed again by the other series, and thus is transported through the leer. To summarize: In the Bievez patent the frame has a free, vertical, and longitudinal movement. Its function is to lift a sheet of glass by its vertical movement from the floor of the leer, and by its longitudinal movement carry it to an advanced position on the floor. In the Bievez patent, one series of shelves moves vertically and longitudinally, while the other set is moving vertically and longitudinally in an opposite direction. The function performed by the shelves is to transfer a sheet of glass from one set to the other, and advance it through the leer. In the Bievez leer the sheet of glass rests upon the bottom of the leer throughout its passage except while being advanced at each elevation of the frame. In the Bouvy leer the glass does not rest at any time in its passage through the leer upon the floor, but it is not advanced in the same horizontal plane, and in its movement describes a circle which varies the longitudinal plane about eight inches.

Besides the patents introduced in the former litigation to show the prior state of the art, the defendant has introduced others in the present case, of which those relied on in argument at the bar are the French patent to Leverne of 1868, and the Belgian patent to Bouillet of 1878. The Belgian patent to Gugnon, set up in the answer, cannot be considered, because it was not introduced in evidence. Neither of these new patents are of any value as impeaching the novelty of the claim as it has been construed. Each of them belongs to the Bievez type, but in Bouillet's two sets of parallel bars co-operate to lift the glass from the floor, and advance it along the leer instead of the single set of Bievez. It is plain that the novelty of the first claim of Tondeur's patent resides in the substitution of his supporting bars for the floor or floor ribs of the leer shown in all the earlier ones of the Bievez type, and in so arranging his two sets of bars that when in operation at all times while the glass is moving through the leer it is carried forward on practically the same horizontal plane, instead of on the varying plane of Bouvy. The two pronounced advantages of Tondeur's invention, according to the proofs, arise from the arrangement of the bars at some distance above the floor of the leer, and in such relation to each other that they retain at all times while advancing the glass practically in the same horizontal plane; and unless the claim can be limited to such combination it is very doubt-

ful whether it has any patentable novelty. If Tondeur had stated in his specification substantially that he had discovered that by maintaining the glass constantly at the same distance above the floor of the leer throughout its passage, and by advancing it through the leer in practically the same horizontal plane, an improvement in the art of annealing would be effected, there would be no difficulty in giving the first claim the broad construction which has been placed upon it by the expert for complainant, and in the previous adjudications. That an improvement is effected by such treatment cannot well be gainsaid upon the proofs in the present record. In order to obtain the best results, both in obviating breakage in the process and in improving the quality of the glass, the cooling process should be such that the glass may be homogeneous throughout, and the tension of its particles uniform. Currents of cold air occur at the floor of the leer. The heat is unequally distributed throughout the glass during the time it is resting upon the floor. The temperature is more uniform at some distance above the floor, and along the same horizontal plane. Unless the glass is maintained at substantially the same horizontal plane it is subjected to the variation of temperature which exists between the upper and lower portions of the leer. It is advantageous to so support the glass in the leer that the heat may be freely radiated from both surfaces, and at an equal rate. The proofs show quite persuasively that the leers constructed conformably to Tondeur's patent, with the limitations mentioned, have superseded all the leers in this country in commercial use. It is also to be observed that there is no evidence that leers of the Bouvy or Bouillet type have ever been used or constructed. If the specification which is addressed to those skilled in the art instructs them that the bars are to be located at some distance above the floor of the leer, and are to be so arranged that when the operating mechanism is applied to them they will maintain the glass on practically the same horizontal plane while advancing it through the leer, it is immaterial that Tondeur did not more precisely point out the advantages which would inure from such an arrangement, or whether he himself was aware of these advantages at the time of obtaining his patent. The specification states that "a space about a foot deep is desirable beneath the bars." The drawings show the bars raised some distance above the floor. The specification also states that the reciprocating bars are lowered and the supporting bars are raised in the operation of transferring the glass "to the extent of about one inch." In view of these statements in the specification, and what is shown in the drawings, it cannot be affirmed that the conclusions reached by Judge ACHESON are unwarranted, although, as an original proposition, I should doubt whether the necessary limitations are sufficiently implied from the specification to be read into the claim. Certainly the case is not one in which I should be justified in refusing to follow his decision. A decree is ordered for the complainant.